259 P.3d 270 (2011)
162 Wash.App. 468
STATE of Washington, Respondent,
v.
Michael Shawn BAKER, Appellant.
No. 64511-1-I.
Court of Appeals of Washington, Division 1.
April 25, 2011.
Publication Ordered July 25, 2011.
*271 Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Appellant.
Heidi Joanne Jacobsen-Watts, King County Prosecuting Attorney's Office, Seattle, WA, for Respondent.
GROSSE, J.
¶ 1 Evidence of a defendant's prior crimes, wrongs, or acts is presumptively inadmissible to prove character or to show action in conformity therewith. Such evidence is, however, admissible for other purposes, such as proof of motive, absence of mistake or accident, or to assist the jury in assessing the credibility of a witness who is the victim of domestic violence at the hands of the defendant. Here, the trial court properly determined that evidence of Michael Baker's prior assaults on the victim was admissible for these purposes. Accordingly, we affirm Baker's conviction.

FACTS
¶ 2 The victim, Jennifer Ingram, dated appellant Michael Baker for about a year. According to Ingram, the beginning of their relationship was very good, but after several months, Baker's behavior changed and he became more controlling. The record shows that Baker strangled Ingram on at least four occasions. The State charged Baker with two of these incidents and offered evidence of two prior strangling incidents under ER 404(b).
¶ 3 During one of the prior incidents, in November 2008, Baker strangled Ingram while she was lying on the bed in a house Baker rented in the Yesler neighborhood. Baker's friend was living in the same house at the time and saw the incident. Ingram testified that while Baker was strangling her, the friend told her she was turning purple and told her to stop moving and making noise so Baker would stop. Ingram did not call the police after this incident because she was scared and embarrassed and thought the situation would improve and because she *272 loved Baker and did not want to get him in trouble.
¶ 4 The second incident the State offered into evidence under ER 404(b) also occurred in November 2008 at the house in the Yesler neighborhood. This time, Ingram was sitting on the bed and Baker saw that she was about to take a morning-after pill. Baker grabbed the pill from Ingram and then strangled her until she passed out and fell off the bed. When Ingram regained consciousness, Baker "made noise with the shower curtain," which Ingram thought meant that he was going to kill her and wrap her body in the shower curtain. Ingram did not call the police after this incident because she was scared and was afraid that Baker's family would be upset if she called the police.
¶ 5 Ingram moved out of the Yesler house in December 2008 and stayed with her aunt and uncle for a few weeks. In early January 2009, Ingram was at a friend's house and Baker arrived at the house to pick her up and take her to her apartment. When they were in Ingram's apartment, Baker and Ingram began arguing, and Baker strangled Ingram while she was on the bed. Ingram tried to scream and kicked the blinds off the window in an effort to make noise, hoping that someone would hear her or that the noise would make Baker stop strangling her. Baker stopped and quickly left Ingram's apartment, taking her apartment keys, cell phone, debit card, and a pack of cigarettes with him. Within a minute or two, Ingram realized that her possessions were missing, and she tried to find a neighbor who would let her use a phone. A downstairs neighbor let her in and called the police. The police and medics arrived and questioned Ingram and took pictures of her neck.
¶ 6 Later in January 2009, Baker and a few friends showed up at Ingram's school. They dropped Ingram off at an appointment; the friends left, but Baker waited for her. Afterwards, Ingram and Baker went to Ingram's apartment. While they were sitting on her couch, Baker saw Ingram with a cell phone in her hand and got upset, thinking that Ingram was going to call the police. Ingram then reached for some food, and Baker thought she was reaching for her phone to call the police. Baker immediately started to strangle Ingram. Ingram testified that, this time, Baker strangled her for a longer period of time than the prior three occasions. Ingram did not call the police after this incident.
¶ 7 The State charged Baker with two counts of second degree assaultdomestic violence. Baker objected to the admission of evidence of the two earlier, uncharged, assaults, arguing that the evidence was not admissible under ER 404(b). The trial court ruled that the evidence was admissible, finding that the State proved the prior assaults by a preponderance of the evidence and that the evidence was more probative than prejudicial, showed the nature of the relationship between Baker and Ingram, and was admissible to show motive and absence of mistake or accident and to assist the jury in assessing Ingram's credibility as a witness.
¶ 8 The jury convicted Baker of one count and acquitted him of the other count.[1] Baker appeals, arguing that the trial court erred in admitting evidence of the prior assaults under ER 404(b).

ANALYSIS
¶ 9 Under ER 404(b),
[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 10 This list of other purposes for which such evidence of other crimes, wrongs, or acts may be introduced is not exclusive.[2]
*273 ¶ 11 To admit evidence of a defendant's other wrongs, the trial court must (1) find by a preponderance of the evidence that the wrongs occurred; (2) identify the purpose for which the evidence is sought to be introduced; (3) determine whether the evidence is relevant to prove an element of the crime with which the defendant is charged; and (4) weigh the probative value of the evidence against its prejudicial effect.[3]
¶ 12 We review a trial court's decision to admit evidence under ER 404(b) for abuse of discretion.[4] A trial court abuses its discretion if it exercises it on untenable grounds or for untenable reasons.[5]
¶ 13 Baker challenges the trial court's determination that evidence of his prior assaults on Ingram was relevant to show the nature of the relationship between him and Ingram and was admissible as evidence of motive, to show the absence of mistake, and to assist the jury in assessing Ingram's credibility.[6] He argues that evidence of the prior assaults is inadmissible propensity evidence. We disagree.
¶ 14 Motive, for purposes of the admissibility of evidence under ER 404(b), "goes beyond gain and can demonstrate an impulse, desire, or any other moving power which causes an individual to act."[7] Evidence of a hostile relationship between the defendant and the victim has been held admissible in murder trials to show motive.[8] We find that such evidence is likewise admissible here to show Baker's motive. We agree with the State that Baker's reliance on State v. Saltarelli[9] is misplaced. In that case, the court held that evidence of the defendant's assault on a woman was not relevant to the issue of the defendant's motive for raping a different woman almost five years later. Saltarelli is readily distinguishable on the very significant grounds that Baker's prior assaults were on the same victim as the assaults with which he was charged and that the assaults were but months apart.
¶ 15 Evidence of Baker's prior assaults on Ingram is also, as the trial court determined, relevant to prove lack of accident or mistake. Contrary to Baker's assertion, his own defense to count I rendered the issue of accident or mistake relevant. Specifically, he testified that, during the incident on which count I was based, he put his hand over Ingram's mouth as he was helping Ingram, whom he claimed was intoxicated and argumentative, undress for bed.
¶ 16 Finally, the trial court properly admitted evidence of Baker's prior assaults on Ingram as relevant to the jury's assessment of Ingram's credibility. In State v. Grant,[10] involving a conviction of domestic violence felony violation of a post-sentence court order, the victim changed her story after initially denying that the defendant assaulted her. We held that evidence of the defendant's prior assaults on the victim was admissible under ER 404(b) because the evidence helped the jury assess the credibility of the victim at trial and to understand why she told conflicting stories. In State v. Magers,[11] our Supreme Court adopted the rationale in Grant and concluded "that prior acts of domestic violence, involving the defendant and the crime victim, are admissible in order to assist the jury in judging the credibility of *274 a recanting victim." We disagree with Baker that the fact that Grant and Magers involved recanting victims renders those cases inapposite here. On the contrary, the court's reasoning in Grant, which the court in Magers adopted, shows that evidence of Baker's prior assaults on Ingram was properly admitted to help the jury's assessment of Ingram's credibility. Although Ingram did not recant, she testified at trial that she did not contact the police after Ingram strangled her the first two times, nor did she call the police after he strangled her on the last occasion. She testified to being embarrassed, scared of the repercussions, afraid to upset Baker's family by reporting the assaults, and reluctant to anger Baker. The court in Grant stated:
As is reflected in the present case, victims of domestic violence often attempt to placate their abusers in an effort to avoid repeated violence, and often minimize the degree of violence when discussing it with others. The Grants' history of domestic violence thus explained why Ms. Grant permitted Grant to see her despite the no-contact order, and why she minimized the degree of violence when she contacted Grant's defense counsel after receiving a letter from Grant, sent from jail. Ms. Grant's credibility was a central issue at trial. The jury was entitled to evaluate her credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim.[12]
¶ 17 In this case as well, the jury was entitled to evaluate Ingram's credibility with full knowledge of the dynamics of her relationship with Baker.

CONCLUSION
¶ 18 We affirm Baker's conviction.
WE CONCUR: ELLINGTON and BECKER, JJ.
NOTES
[1] The jury convicted Baker of the incident that occurred in early January, after Baker had picked up Ingram at her friend's house. The jury acquitted Baker of the incident that occurred in late January, after Baker and Ingram went to her apartment following her appointment.
[2] State v. Grant, 83 Wash.App. 98, 105, 920 P.2d 609 (1996).
[3] State v. Fualaau, 155 Wash.App. 347, 356-57, 228 P.3d 771, review denied, 169 Wash.2d 1023, 238 P.3d 503 (2010).
[4] State v. Magers, 164 Wash.2d 174, 181, 189 P.3d 126 (2008).
[5] Fualaau, 155 Wash.App. at 356, 228 P.3d 771.
[6] Baker does not challenge the trial court's determination that the State proved the prior assaults by a preponderance of the evidence. Also, he argues the prejudicial nature of the evidence only in connection with his argument that the error he alleges is not harmless and requires reversal. Because we find no error, we do not undertake a harmless error analysis and accordingly do not reach Baker's probative versus prejudicial argument.
[7] State v. Powell, 126 Wash.2d 244, 259, 893 P.2d 615 (1995).
[8] See Powell, 126 Wash.2d at 260, 893 P.2d 615; State v. Hoyer, 105 Wash. 160, 177 P. 683 (1919).
[9] 98 Wash.2d 358, 655 P.2d 697 (1982).
[10] 83 Wash.App. 98, 920 P.2d 609 (1996).
[11] 164 Wash.2d 174, 186, 189 P.3d 126 (2008).
[12] Grant, 83 Wash.App. at 107-08, 920 P.2d 609.