FILED
COURT OF APPEALS
DIVISION II

2013 SEP 24 AM 9:27

STATE OF WASHINGTON

BY _____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>         Respondent,<br><br>v.<br><br>AARON JASON THOMAS,<br><br>         Appellant. | No. 42895-4-II<br><br>UNPUBLISHED OPINION |

MAXA, J. — Aaron Jason Thomas appeals his convictions for second degree assault for punching and choking his girl friend and five counts of violating a court order prohibiting contact with his mother. With regard to the violating a court order convictions, he argues that (1) the information did not provide adequate notice of the charges against him, (2) the trial court erred by not instructing the jury on the essential elements of each crime, and (3) insufficient evidence supports his convictions. With regard to the assault conviction, he argues that (1) the trial court erroneously granted the State's motion to admit evidence of his prior bad acts under ER 404(b), (2) the trial court erred by not instructing the jury on the limited use of the ER 404(b) evidence, and (3) his counsel was ineffective for failing to request the limiting instruction.

We hold that (1) the information was adequate because it identified the specific order Thomas was alleged to have violated, (2) the jury instruction and sufficiency claims fail because the statutory authority of the court orders giving rise to the convictions was not an essential element of the charged crimes for the jury's consideration, (3) the trial court properly admitted

evidence of a prior assault and threat as proof of his girl friend's credibility under ER 404(b), (4) the trial court had no duty to give a limiting instruction sua sponte, and (5) counsel was not ineffective for not requesting a limiting instruction because that decision may have been a legitimate trial tactic. Accordingly, we affirm.

FACTS

*CRIMES*

Thomas lived with his mother, Dawn Woods, in Woods's home. This living arrangement violated a Kitsap County District Court order prohibiting Thomas from contacting Woods or coming within 500 feet of her residence. Juliana Taylor was Thomas's girl friend, and she moved in with him (and Woods) in early 2011 shortly after they began dating. Thomas instructed Taylor not to tell anyone that he was living with Woods and threatened that if she did tell someone, "I wouldn't sleep, if I was you." Report of Proceedings (RP) (Nov. 29, 2011) at 94. In May or June of 2011, Thomas punched Taylor's face and body, causing bruising on her ribs, face, legs, and arms. Taylor did not report the incident to the police and continued her relationship and living arrangement with Thomas.

On July 10, Thomas and Taylor began to argue while sitting in the back seat of a car. Woods and her boyfriend were in the front seat. Thomas punched Taylor in the face two or three times and placed his hands around her neck, which restricted her breathing. Taylor was frightened and feared that she would die because she could not breathe. Taylor suffered noticeable bruising around her eyes and a red rash on her neck. Nevertheless, she went home with Thomas and did not call the police because she feared Thomas's reaction.

The next day Taylor told her father about her injuries, and he saw her bruises. Taylor's father called the police. Taylor spoke to a detective and told him that Thomas had hit her, but

2

she did not tell him that Thomas had choked her. Further investigation revealed that Thomas had been inside Woods's home in violation of the no-contact order.

PROCEDURE

The State charged Thomas with second degree assault and five counts of violating a court order, each with a special domestic violence allegation. Thomas's prior convictions for violating a court order elevated these court order violation charges to felonies. The information alleged, in part:

> On or about [date],[1] in the County of Kitsap, State of Washington, the above-named Defendant, with knowledge that the Kitsap County District Court had previously issued a foreign protection order, protection order, restraining order, no contact order, or vulnerable adult order pursuant to state law in Cause No. 16652723, did violate said order by knowingly violating the restraint provisions therein, and/or by knowingly violating a provision excluding him or her from a residence, a workplace, a school or a daycare, and/or by knowingly coming within, or knowingly remaining within, a specified distance of a location, and/or by knowingly violating a provision of a foreign protection order for which a violation is specifically indicated to be a crime; and furthermore, the Defendant did have at least two prior convictions for violating the provision of a court order issued under Chapter 10.99, 26.09, 26.10, 26.26, 26.50, 26.52, and/or 74.34 RCW, or a valid foreign protection order as defined in RCW 26.50.020; contrary to Revised Code of Washington 26.50.110.

Clerk's Papers (CP) at 1-6. Thomas neither challenged the sufficiency of the information nor requested a bill of particulars.

The State moved in limine to allow evidence of the prior assault in which Thomas had punched Taylor in the face and body and his prior threat that Taylor should not sleep if she told anyone that he was living with Woods. The trial court ruled that this evidence was admissible to "explain the dynamics of the relationship" and "to allow the jury to properly assess . . . Taylor's credibility." RP (Nov. 22, 2011) at 41-42. The trial court encouraged defense counsel to

---

[1] The State charged five separate violations of the no-contact order: on or about May 21, 2011; June 3, 2011; June 30, 2011; July 10, 2011; and on or between July 10, 2011, and July 12, 2011.

consider submitting an instruction to limit the jury's use of the prior incidents. At trial, the court admitted Taylor's testimony regarding Thomas's prior assault and threat. The defense did not propose a limiting instruction, and the trial court did not provide one sua sponte.

The parties stipulated that Thomas was the respondent in the no-contact order relating to Woods and that he had more than two prior convictions for violating a court order. The stipulation was read to the jury. The State also introduced into evidence a certified copy of the no-contact order.

The jury found Thomas guilty on all charges. He appeals.

## ANALYSIS

### A. ADEQUACY OF THE INFORMATION

Thomas alleges for the first time on appeal that the information charging him with violations of a court order was deficient under the Sixth and Fourteenth Amendments of the United States Constitution and article I, section 22 of the Washington State Constitution because it failed to allege the statutory authority underlying the no-contact order he was charged with violating. We disagree.

A challenge to the constitutional sufficiency of a charging document may be raised for the first time on appeal. *State v. Nonog*, 169 Wn.2d 220, 225 n.2, 237 P.3d 250 (2010). We review challenges to the sufficiency of a charging document de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). However, when the defendant challenges the sufficiency of an information for the first time on appeal, we construe the document liberally in favor of validity. *State v. Zillyette*, No. 87614-2, 2013 WL 3946066, at *4 (Wash. Aug. 1, 2013).

A charging document must include all essential elements of a crime in order to afford the accused notice of the crime charged and to allow the accused to prepare a defense. *Zillyette*,

4

2013 WL 3946066, at *2. " 'An essential element is one whose specification is necessary to establish the very illegality of the behavior charged.' " *Zillyette*, 2013 WL 3946066, at *2 (internal quotation marks omitted) (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). " '[E]ssential elements include only those facts that must be proved beyond a reasonable doubt to convict a defendant of the charged crime.' " *Zillyette*, 2013 WL 3946066, at *2 (alteration in original) (internal quotation marks omitted) (quoting *State v. Powell*, 167 Wn.2d 672, 683, 223 P.3d 493 (2009) (lead opinion)), *overruled on other grounds by State v. Siers*, 174 Wn.2d 269, 276, 274 P.3d 358 (2012)). The test is (1) whether the essential elements appear in any form, or by fair construction, in the information and, if so, (2) whether the defendant nonetheless can show that he or she was actually prejudiced by the unartful language used.[2] *Zillyette*, 2013 WL 3946066, at *4. If the first prong is not satisfied, " 'we presume prejudice and reverse without reaching the question of prejudice.' " *Zillyette*, 2013 WL 3946066, at *4 (quoting *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000)).

Here, the State charged Thomas under former RCW 26.50.110 (2009), which provides:

> **Violation of order—Penalties.** (1)(a) Whenever an order is granted *under this chapter, chapter 7.90, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW*, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:
>
> . . . .
>
> (5) A violation of a court order issued *under this chapter, chapter 7.90, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW*, or of a valid foreign protection order as defined in RCW 26.52.020, is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, chapter 7.90, 9.94A, 10.99, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020. The previous

---

[2] Because Thomas does not attempt to show prejudice on appeal, we consider only the first prong.

convictions may involve the same victim or other victims specifically protected by the orders the offender violated.

(Emphasis added.) Thomas contends that because subsection (5) criminalizes violations of orders issued only under certain enumerated statutes, the information had to specify the RCW chapter under which the no-contact order was issued. Otherwise, he would be unable to determine whether the order he violated was a "qualifying" order under former RCW 26.50.110(5).

Thomas is correct that the information did not specifically identify a qualifying statute.[3] However, the information did identify the Kitsap County District Court cause number in which the court had issued the order Thomas was alleged to have violated. The record shows that this order was issued under RCW 10.99. The information also recited that Thomas had violated this court order "contrary to Revised Code of Washington 26.50.110," which includes a court order issued under RCW 10.99. CP at 2-6. As a result, Thomas was given fair notice of the crime charged.

Our Supreme Court addressed a similar issue in *Zillyette*. Zillyette challenged the information charging her with controlled substances homicide because it did not identify the controlled substance she had allegedly delivered to the victim. *Zillyette*, 2013 WL 3946066, at *1. The court stated that the specific identity of a controlled substance is not necessarily an essential element of controlled substances homicide. *Zillyette*, 2013 WL 3946066, at *3. However, because not all controlled substances can be the basis for controlled substances homicide, some degree of specification was necessary to establish the " 'illegality of the behavior charged.'" *Zillyette*, 2013 WL 3946066, at *3 (internal quotation marks omitted)

---

[3] Again we note that Thomas never challenged the information below or claimed that he lacked the sufficient notice of the charges against him.

(quoting *Ward*, 148 Wn.2d at 811). Accordingly, the court held that if the information for controlled substances homicide does not identify the controlled substance, it must at least specify the applicable RCW 69.50.401(2) subsection[4] or identify the schedule of controlled substance that caused the user's death. *Zillyette*, 2013 WL 3946066, at *3. Because the information did not provide any basis for identifying the controlled substance, the court concluded that the information failed to allege facts necessary to charge the defendant with controlled substance homicide and dismissed the charge. *Zillyette*, 2013 WL 3946066, at *5.

*Zillyette* does not compel a different result here. In that case the court held that an information charging controlled substances homicide must identify the name of the controlled substance, the applicable RCW subsection, or the schedule of controlled substance that caused the user's death. *Zillyette*, 2013 WL 3946066, at *3, 5. For example, a charging document that states the name of the controlled substance is sufficient without referencing the RCW subsection. *Zillyette*, 2013 WL 3946066, at *5. Here, because the information expressly identified the actual order Thomas had allegedly violated, it was not necessary to recite the qualifying statute. Therefore, we hold that the essential elements of the charge appeared in the information, and we reject Thomas's challenge to its adequacy.

B.   ESSENTIAL ELEMENT OF CRIME

Thomas claims that in order to convict him for violating a court order, the State had to show and the jury had to find that the order he allegedly violated was a qualifying order under former RCW 26.50.110(5) and that the prior convictions were for violations of qualifying orders. He argues that (1) because the State presented no such evidence at trial, the evidence was

---

[4] RCW 69.50.401(2) is divided into five subsections: (a)-(e). But only subsections (a)-(c) apply to controlled substances homicide. RCW 69.50.415(1).

insufficient to support his convictions and (2) the jury instructions were improper because they omitted essential elements of the crime. We disagree.

Thomas confuses the role of the judge and the jury in RCW 26.50.110(5) cases. The statutory authority for issuing the court order allegedly violated is not an essential element of the crime for the jury to decide, but rather a threshold determination the trial court makes as part of its gatekeeping function before admitting evidence of an order or a prior conviction for the jury's consideration. *State v. Gray*, 134 Wn. App. 547, 554-56, 138 P.3d 1123 (2006). As a result, it would have been inappropriate to submit evidence and instruct the jury on the statutory authority for the earlier courts' issuance of the respective orders. We address each argument in turn.

1. Sufficiency of the Evidence

In determining a sufficiency of the evidence claim, we view the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. McKague*, 172 Wn.2d 802, 805, 262 P.3d 1225 (2011). Although the existence of a court order is an element of the crime of violating such an order, the issuing court's statutory authority is not. *State v. Miller*, 156 Wn.2d 23, 24, 123 P.3d 827 (2005); *Gray*, 134 Wn. App. at 556. The trial court decides whether the issuing court's order qualifies under RCW 26.50.110(5).

Here, the State proved the existence of the Kitsap County District Court's no-contact order that Thomas violated by entering a certified copy of the actual order as an exhibit at trial.[5] The parties also stipulated that Thomas was the respondent in that order and that he had more

---

[5] Although unnecessary under *Miller* and *Gray*, the State provided sufficient evidence that the current order was a qualifying order because the order was admitted as evidence and it was issued under RCW 10.99. 156 Wn.2d at 24; 134 Wn. App. at 556.

than two prior convictions for violations of a court order.[6] We hold that this evidence was sufficient to support the jury's finding that he violated a qualifying order under RCW 26.50.110(5).

2. Jury Instructions

We review the adequacy of jury instructions de novo as a question of law. *State v. Sibert*, 168 Wn.2d 306, 311, 230 P.3d 142 (2010). Instructing the jury in a manner that relieves the State of its burden to prove every element of a crime beyond a reasonable doubt is a violation of due process and requires automatic reversal. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

The jury instructions here did not instruct the jury on the type of order that would qualify for conviction or the type of prior conviction that would elevate the charged crimes to felonies. However, as we have previously noted, an order's statutory authority is an issue for the trial court to determine, not for the jury. Therefore, at trial the State need not prove such authority beyond a reasonable doubt and the trial court need not address such authority in the jury instructions. We hold that the trial court did not err in giving jury instructions that did not include the issuing court's statutory authority.

C.    PRIOR MISCONDUCT – ER 404(b) EVIDENCE

Thomas argues that the trial court erroneously granted the State's motion to admit evidence of his prior threat and assault against Taylor. He further argues that the admission of this evidence without a limiting instruction violated his due process rights because it allowed his

---

[6] Consistent with his stipulation below, Thomas does not challenge on appeal the admissibility or applicability of evidence of the no-contact order or the prior convictions.

conviction to be based on improper propensity evidence. Finally, he claims that his counsel was ineffective for not requesting a limiting instruction. We disagree.

1. Admissibility under ER 404(b)/ER 403

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, this evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). The list of other purposes for which evidence of a defendant's prior misconduct may be introduced is not exclusive. *State v. Baker*, 162 Wn. App. 468, 472-73, 259 P.3d 270, *review denied*, 173 Wn.2d 1004 (2011).

We review a trial court's interpretation of ER 404(b) de novo as a question of law. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). We then apply that interpretation in reviewing a trial court's decision to admit misconduct evidence for an abuse of discretion. *Fisher*, 165 Wn.2d at 745. A trial court abuses its discretion if it relies on unsupported facts, applies the wrong legal standard, or adopts a position no reasonable person would take. *State v. Lord*, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007).

We read ER 404(b) in conjunction with ER 403, which requires the trial court to exercise its discretion in evaluating whether relevant evidence is unfairly prejudicial. *Fisher*, 165 Wn.2d at 745. Before a trial court admits evidence under ER 404(b), it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value of the evidence against its prejudicial effect. *Fisher*, 165 Wn.2d at 745. The trial court must complete the ER 404(b) analysis on the record in order

10

to permit the appellate court to determine whether the trial court's exercise of discretion was based on careful and thoughtful consideration of the issue. *State v. Stein*, 140 Wn. App. 43, 67, 165 P.3d 16 (2007).

Several cases have held that evidence of a defendant's prior domestic violence acts involving the defendant and the crime victim may be admissible under ER 404(b) to assist the jury in judging the victim's credibility. *State v. Magers*, 164 Wn.2d 174, 186, 189 P.3d 126 (2008) (allowing evidence of prior domestic violence incident to evaluate credibility of recanting victim); *State v. Grant*, 83 Wn. App. 98, 106-09 , 920 P.2d 609 (1996) (allowing evidence to explain why the victim's statements and conduct might appear inconsistent with the victim's testimony at trial); *State v. Wilson*, 60 Wn. App. 887, 891, 808 P.2d 754 (1991) (allowing evidence of prior physical abuse of the victim to explain the victim's delay in reporting the abuse). Division One of this court noted:

> "[V]ictims of domestic violence often attempt to placate their abusers in an effort to avoid repeated violence, and often minimize the degree of violence when discussing it with others. [The victim's] credibility was a central issue at trial. The jury was entitled to evaluate her credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim."

*Baker*, 162 Wn. App. at 475 (quoting *Grant*, 83 Wn. App. at 107-08).

In its pretrial ruling on the State's motion to admit evidence under ER 404(b), the trial court here ruled that Thomas's alleged prior assault and threat against Taylor were relevant to explain the dynamics of their relationship and to allow the jury to properly assess Taylor's credibility. As required by ER 403, the trial court balanced on the record the value of the evidence against the prejudice to Thomas. It concluded that the prior acts were "extremely relevant in [this] domestic violence case [because] it is important to understand how the parties

11

operated both in their recent pasts and under the current situation" and that admitting the evidence did not constitute extreme or undue prejudice to Thomas. RP (Nov. 22, 2011) at 42.

Thomas challenges the trial court's analysis on two grounds. First, he argues that the trial court's rationale for admitting the prior assault and threat does not apply in this case. Drawing a factual distinction from the more lengthy relationships between the defendant and victim in *Magers* and *Grant*, Thomas argues that a "single assault in the context of a short-term relationship is not necessarily equivalent to domestic violence in a long-term relationship." Br. of Appellant at 18. Although *Grant* recognized that domestic violence tends to recur and to intensify in frequency and degree of violence over time, neither *Grant* nor *Magers* indicates that the length of a relationship dictates whether prior domestic violence incidents are relevant to assess the victim's credibility.[7] *Magers*, 164 Wn.2d at 184-86; *Grant*, 83 Wn. App. at 109.

Contrary to Thomas's allegation, the trial court's articulated reason for admitting his prior domestic violence assault and threat against Taylor – to explain the dynamics of their relationship and to aid the jury in assessing Taylor's credibility – is relevant. Thomas's theory of the case was that Taylor had "credibility issues." RP (Nov. 30, 2011) at 291. He used Taylor's delay in reporting the charged assault to the police and the testimony of his mother's boyfriend to argue that the charged assault never occurred. Consequently, Taylor's delayed and inconsistent reporting of the charged assault could have been viewed as incompatible with her trial testimony – that the charged assault had occurred – and could have reflected negatively on her credibility. Evidence of Thomas's prior assault of Taylor and threat helped explain why she did not initially

---

[7] Thomas also notes that the State did not introduce opinion testimony addressing the psychological effects of a single assault in a short-term relationship; but he does not provide authority requiring such testimony or explain why such testimony should be required, contrary to RAP 10.3(a)(6). Thus, we do not further consider this argument.

report the charged assault to the police. *See Baker*, 162 Wn. App. at 475. The length of their relationship is immaterial in this context.

Second, Thomas argues that admitting evidence of his prior assault and threat substantially and unfairly prejudiced him, implying that in its ER 403 weighing, the trial court underestimated that prejudice. We disagree. The trial court repeatedly asked defense counsel to articulate the prejudice to Thomas, but defense counsel could not. On its own, the trial court considered that the evidence might prejudice Thomas by evoking an emotional response rather than a rational decision from the jury. However, the trial court ultimately determined that the potential prejudice did not outweigh the probative value of explaining the dynamics of the relationship and in assessing Taylor's credibility, which was at issue. Because the trial court considered the arguments of counsel, weighed the probative value against the prejudice to Thomas on the record, and came to a reasoned decision, we hold that the trial court did not abuse its discretion in admitting the prior assault and threat under ER 404(b).

2.    Propensity Evidence Limiting Instruction

Thomas argues that his due process rights were violated because the jury was allowed to consider his prior bad acts as propensity evidence. Although Thomas does not assign error to the jury instructions, it appears that he is arguing that the trial court erred by failing to instruct the jury sua sponte that it could use the evidence of his prior bad acts solely to assess Taylor's credibility. This argument also fails.

"If evidence of a defendant's prior crimes, wrongs, or acts is admissible for a proper purpose, the defendant is entitled to a limiting instruction upon request." *State v. Gresham*, 173 Wn.2d 405, 423, 269 P.3d 207 (2012). As a result, Thomas would have been entitled to an ER 404(b) limiting instruction if he had requested one. But despite the trial court's invitation,

13

Thomas did not request a limiting instruction on the ER 404(b) evidence. The trial court has no duty to give an ER 404(b) limiting instruction sua sponte. *State v. Russell*, 171 Wn.2d 118, 123-24, 249 P.3d 604 (2011) (citing ER 105). Accordingly, we hold that the failure to give a limiting instruction was not error.

### 3. Ineffective Assistance of Counsel

Thomas also argues that his counsel was ineffective for failing to request a limiting instruction on the jury's use of the ER 404(b) evidence. We disagree.

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was "deficient" and (2) the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). The failure to show either element ends our inquiry. *Grier*, 171 Wn.2d at 33. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34.

We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. A claim that trial counsel provided ineffective assistance does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactic. *Grier*, 171 Wn.2d at 33. To rebut the strong presumption that counsel's performance was reasonable, "the defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's

14

No. 42895-4-II

performance.' " *Grier*, 171 Wn.2d at 42 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Courts generally presume that defense counsel's choice not to request a limiting instruction was a tactical decision to avoid drawing further attention to the evidence and, therefore, place the burden on the defendant to rebut this presumption. *State v. Yarbrough*, 151 Wn. App. 66, 90-91, 210 P.3d 1029 (2009). Here, Thomas's counsel may have decided to forgo a limiting instruction to avoid reemphasizing the prior bad acts and to avoid undermining the defense's position that Taylor was not a credible witness. Because defense counsel's failure to request a limiting instruction may have been a legitimate trial tactic, Thomas does not show that his trial counsel's performance fell below an objective standard of reasonableness. Accordingly, Thomas's ineffective assistance claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
HUNT, J.

_____
WORSWICK, C.J.

15