FILED
COURT OF APPEALS
DIVISION II

2013 NOV 19 AM 8: 38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | No. 42803-2-II |
| v. | PART PUBLISHED OPINION |
| DENNIS LAWRENCE McCARTHY, | |
| Appellant. | |

MAXA, J. – Dennis McCarthy appeals his convictions and sentence for second degree assault and first degree assault against his girl friend. McCarthy challenges the trial court's decision to provide the jury with a tape measure and masking tape during deliberations without consulting him or counsel, arguing that this conduct violated his right to a public trial, right to be present and right to counsel. We hold that (1) McCarthy's public trial right was not implicated because the trial court's response to the jury request was not a proceeding historically open to the public, and (2) McCarthy's right to be present and right to counsel were not violated because the provision of the materials was a ministerial matter and the tape measure and masking tape were not evidence.

McCarthy also argues that the trial court improperly decided whether the two assault convictions were the same criminal conduct rather than submitting the issue to the jury. We hold that the trial court and not the jury properly decided whether McCarthy's two convictions

constituted the same criminal conduct. We address additional issues in the unpublished portion of this opinion. We affirm McCarthy's convictions and sentence.

## FACTS

McCarthy's assault charges were tried to a jury. While the jury was deliberating, it asked the trial court for a tape measure and masking tape. The trial court had the bailiff deliver those items to the jury without first consulting counsel. Before the jury returned with its verdict, the trial court informed the parties on the record that it had provided those items to the jury and asked if there were any objections. McCarthy expressed concern that the trial court did not consult the parties before providing the supplies to the jury, but did not state a formal objection or move for a mistrial.

The jury convicted McCarthy on both assault charges. At sentencing, the trial court concluded the first and second degree assault convictions were not the same criminal conduct, and counted each conviction as one point for offender score purposes. McCarthy appeals.

## ANALYSIS

A.    TRIAL COURT'S RESPONSE TO JURY REQUEST FOR MATERIALS

McCarthy argues that the trial court's providing the jury with a tape measure and masking tape during deliberations outside his, his counsel's and the public's presence violated his rights to a public trial, to be present at trial, and assistance of counsel. We disagree because responding to jury requests for materials does not implicate the right to a public trial and the trial court did not violate McCarthy's right to be present or right to counsel because of the ministerial nature of the response to the jury's request.

2

No. 42803-2-II

1. Public Trial Right

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). In general, this right requires that certain proceedings must be held in open court unless application of the five-factor test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) supports closure of the courtroom.[1] We review public trial claims de novo. *Wise*, 176 Wn.2d at 9.

The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *Sublett*, 176 Wn.2d at 71. In *Sublett*, our Supreme Court adopted a two-part "experience and logic" test to address this issue: (1) whether the place and process historically have been open to the press and general public (experience prong) and (2) whether public access plays a significant positive role in the functioning of the particular process in question. 176 Wn.2d at 72-73. Only if both questions are answered in the affirmative is the public trial right implicated.[2] *Sublett*, 176 Wn.2d at 73.

---

[1] McCarthy did not object when informed that the materials had been provided to the jury. However, "a defendant does not waive his right to a public trial by failing to object to a closure at trial." *Wise*, 176 Wn.2d at 15. Accordingly, we address this issue despite the absence of McCarthy's objection below.

[2] Our Supreme Court has held that a personal restraint petitioner has the burden of satisfying the experience and logic test. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 29, 296 P.3d 872 (2013). It remains unclear whether the same rule applies in a direct appeal.

3

We hold that the experience prong shows that the public trial right does not attach to the trial court's response to a jury's request for a tape measure and masking tape. McCarthy cites no authority indicating that a trial court's response to a jury request for these types of additional materials historically has been open to the public. Conversely, the only case addressing a somewhat similar jury request held that the trial court's response did not need to be in open court. In *State v. Koss*, 158 Wn. App. 8, 17-18, 241 P.3d 415 (2010), *review granted*, 176 Wn.2d 1030 (2013), Division Three of this court held that the trial court's in-chambers response to a deliberating jury's request for an audio player to listen to evidence did not violate the defendant's public trial right.

Further, our Supreme Court in *Sublett* held that even responding to "substantive" jury questions does not implicate a public trial right. In *Sublett*, the trial court responded in chambers to a jury question regarding one of the instructions, with only counsel present. 176 Wn.2d at 67. The question and response were then put in the record. *Sublett*, 176 Wn.2d at 67. The court determined that a trial court's discussion with the parties about jury questions and any response was not historically a proceeding to which the public trial right attached. *Sublett*, 176 Wn.2d at 77. In reaching this conclusion, the court noted that the only authority it could find governing jury questions was CrR 6.15(f)(1), which does not require that the trial court discuss questions and appropriate responses in open court.[3] *Sublett*, 176 Wn.2d at 77.

Here, a request for a tape measure and masking tape does not even rise to the level of a question about an instruction. If there is no public trial right for substantive jury questions about

___

[3] CrR 6.15(f)(1) establishes the procedure for a trial court to use when a deliberating jury has a question about the "instructions or evidence," and states that the trial court must respond to all questions "in open court or in writing." This language indicates that a trial court has the option of responding orally to substantive jury questions in open court or privately in writing.

4

No. 42803-2-II

instructions or evidence, there should be no expectation that such a right exists for this non-substantive request. We rely on *Sublett* and hold that a trial court's response to a jury request for a tape measure and masking tape is not a proceeding to which the public trial right attaches. 176 Wn.2d at 77. Accordingly, McCarthy has failed to satisfy the experience prong of the *Sublett* test.[4]

    2.   Defendant's Right To Be Present

McCarthy argues that the trial court violated his constitutional right to be present at trial when it provided the jury with a tape measure and masking tape in his absence. We disagree because responding to a jury request for non-evidentiary materials is not a critical stage of trial.

    a.   Parameters of Right

"A criminal defendant has a fundamental right to be present at all critical stages of a trial." *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). This right derives from the Sixth and Fourteenth Amendments to the federal constitution. *Irby*, 170 Wn.2d at 880-81. Although the right to be present originated in the confrontation clause of the Sixth Amendment, the Fourteenth Amendment due process clause applies where defendants are not actually confronting witnesses or evidence against them.[5] *State v. Jones*, 175 Wn App. 87, 105, 303 P.3d 1084

---

[4] Because the experience prong is not satisfied, we need not address the logic prong. *Sublett*, 176 Wn.2d at 73.

[5] The right to be present also is guaranteed by article I, section 22 of the Washington State Constitution, which provides, "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel." Our Supreme Court has recognized that the state constitutional right to appear and defend arguably is broader than the federal due process right. *Irby*, 170 Wn.2d at 885 n.6. However, McCarthy does not argue that his rights were violated under article I, section 22, so we need not address this issue.

5

(2013), *petition for review filed*, No. 89321-7 (Wash. Sept. 26, 2013).

In general, a stage of trial is "critical" if it presents a possibility of prejudice to the defendant. *State v. Hawkins*, 164 Wn. App. 705, 715, 265 P.3d 185 (2011), *review denied*, 173 Wn.2d 1025 (2012). More specifically, our Supreme Court in *Irby* quoted extensively from *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934), *overruled in part on other grounds sub nom.*, *Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964), in adopting guidelines for analyzing the federal due process right to be present claim. 170 Wn.2d at 881. Initially, "the due process right to be present is not absolute." *Irby*, 170 Wn.2d at 881. " '[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence.' " *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 107-08). Under this standard, a defendant has the right to be present at a proceeding only when there is a " 'reasonably substantial' " relationship between his/her presence and the " 'opportunity to defend' " against a charge. *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 105-106). Conversely, a defendant does not have the right to be present if his/her presence " 'would be useless, or the benefit but a shadow.' " *Irby*, 170 Wn.2d at 881 (quoting *Snyder*, 291 U.S. at 106-07).

b. Particular Proceedings

Several Washington cases have addressed what constitutes a critical stage of a trial that would implicate the defendant's right to be present. "The core of the constitutional right to be present is the right to be present when evidence is being presented." *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994). Accordingly, it appears that any proceeding where the trial court is dealing with evidence is a critical stage. This includes a proceeding involving "a resolution of disputed facts." *Lord*, 123 Wn.2d at 306. In addition, the law is clear

that a defendant has a right to be present during all aspects of the jury selection process, *Irby*, 170 Wn.2d at 883-84, and at the return of the verdict. *State v. Rice*, 110 Wn.2d 577, 617, 757 P.2d 889 (1988).

On the other hand, a defendant has no right to be present at proceedings involving " 'legal' " or " 'ministerial' " matters. *Irby*, 170 Wn.2d at 881-82 (quoting *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 484, 965 P.2d 593 (1998)). The defendant's presence is not required at in-chambers or bench conferences between the trial court and counsel on legal matters (as long as they do not involve the resolution of disputed facts), *Lord*, 123 Wn.2d at 306; or motions for continuance. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 920, 952 P.2d 116 (1998). Further, in *Jones*, we held that the random drawing of names to determine an alternate juror is not a critical stage of trial implicating the defendant's due process right or a proceeding affecting the defendant's substantial rights implicating the state constitutional right to be present. 175 Wn. App. at 105-07.

      c.   Response to Jury Request

The issue here is whether the trial court's response to a jury's request for a tape measure and masking tape constituted a critical stage of trial. We are guided by *State v. Jasper*, where Division One of this court addressed the trial court's response to two jury questions asking for clarification of the law in the defendant's absence. 158 Wn. App. 518, 538-39, 245 P.3d 228 (2010), *aff'd*, 174 Wn.2d 96, 271 P.3d 876 (2012). The court rejected the defendant's right to be present claim, stating, "Because the jury's questions did not raise any issues involving disputed facts, the court's consideration of and response to the jury's inquiries did not constitute a critical stage of the proceedings." *Jasper*, 158 Wn. App. at 539.

7

On the other hand, Division Three of this court indicated that the discussion of jury inquiries (in that case, one involving trial testimony and another requesting a compact disc player) is a critical stage of trial, and broadly stated that "[c]ommunications between the judge and jury without the defendant's presence are error." *Koss*, 158 Wn. App. at 18. The court in *Koss* cited to *State v. Caliguri*, 99 Wn.2d 501, 508-09, 664 P.2d 466 (1983), which held that it was error for the trial court to replay admitted tapes of recorded telephone calls for the jury without the defendant present. 158 Wn. App. at 18-19. Our Supreme Court in *Caliguri* stated, "It is settled in this state that there should be no communication between the court and the jury in the absence of defendant." 99 Wn.2d at 508.

We find *Caliguri* distinguishable. That case involved a "substantive" communication between the trial court and jury – the trial court replayed critical trial evidence for the jury. Here, the interaction between the jury and the judge was administrative or "ministerial." Further, here there was no actual "communication" from the trial court to the jury – the trial court simply provided the requested materials. We do not read *Caliguri* as prohibiting non-substantive contact between the trial court and the jury without the defendant present. And to the extent *Koss* holds that *any* communication – even involving ministerial matters – between the trial court and the jury implicate the right to be present, we disagree and decline to follow such a broad ruling.

Here, the jury's request for a tape measure and masking tape did not involve a substantive issue of law or fact, and did not raise any issues involving disputed facts. It involved simple tools the jury requested for some unstated and unknown purpose, and the trial court handled the request in its administrative capacity. As a result, we hold that the trial court's response to the

request for materials was a ministerial matter that does not invoke the defendant's right to be present. *Irby*, 170 Wn.2d at 881-82.

Nevertheless, McCarthy argues that he had a right to be present because the trial court "effectively presented the jury with additional evidence" when he provided a tape measure and masking tape. Br. of Appellant at 20. We disagree. These materials cannot be classified as evidence. Nothing in the record suggests that a tape measure or masking tape injected new facts regarding this case. Instead, they were tools to assist the jury in understanding or evaluating the evidence presented at trial, much like a calculator, or even a pen and paper. Responding to a jury request for a tape measure and masking tape did not provide the jury with additional evidence.[6]

We hold that the trial court's response to the jury's request for a tape measure and masking tape does not constitute a critical stage of the trial requiring McCarthy's presence. Therefore, the trial court's action did not violate McCarthy's right to be present.

3.   Defendant's Right to Counsel

McCarthy argues that the trial court's responding to the jury's request for a tape measure and masking tape without notifying his attorney violated his constitutional right to counsel. We disagree.

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, "a criminal defendant is entitled to the assistance of counsel at critical stages in the litigation." *State v. Heddrick,* 166 Wn.2d 898, 909-10, 215 P.3d 201 (2009). A "critical stage" in the right to counsel context is when " 'a defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is

---

[6] McCarthy presumes that these materials allowed the jury to perform experiments relating to the dimensions of the window and the distance his girl friend fell. But this is nothing more than speculation. The jury did not state why they wanted them.

otherwise substantially affected.' " *Heddrick*, 166 Wn.2d at 910 (quoting *State v. Agtuca*, 12 Wn. App. 402, 404, 529 P.2d 1159 (1974)).

We held above that the trial court's response to a jury's request for a tape measure and masking tape does not constitute a critical stage of trial for purposes of the defendant's constitutional right to be present. Because the standard for the right to assistance of counsel is almost identical to the right to be present standard, we apply our "right to be present" analysis and holding to the right to assistance of counsel. We hold that a trial court's response to a jury request for a tape measure and masking tape is not a critical stage of trial requiring assistance of counsel.

However, we must address Division Three's statement that "the discussion of a jury inquiry is a critical stage of the trial at which the defendant has a right to meaningful representation by counsel." *Koss*, 158 Wn. App. at 18 (citing *Rogers v. United States*, 422 U.S. 35, 39, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975)). As noted above, we make a distinction between substantive and administrative jury inquiries. In *Rogers* – upon which the court in *Koss* relied – the trial judge without defendant or counsel present told the jury that it could enter a guilty verdict with a recommendation for extreme mercy. 422 U.S. at 36-37. This communication was substantive and very significant. In contrast, the contact here between the jury and the trial court did not involve a substantive matter. As discussed above, we disagree that responding to a jury's inquiry about a "ministerial" matter is a critical stage of the trial. Further, here there was no actual discussion or communication between the trial court and jury. The trial court's bailiff

simply provided the requested materials.[7]

We hold that the trial court's responding to the jury's request for a tape measure and masking tape without notifying defense counsel did not violate McCarthy's constitutional right to counsel.

## B.    SENTENCING: SAME CRIMINAL CONDUCT

Crimes constitute the "same criminal conduct" for sentencing purposes when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). McCarthy argues that the trial court violated his constitutional right to a jury trial during sentencing by deciding the same criminal conduct issue itself rather than submitting the issue to a jury. We disagree.

McCarthy relies on the rule set forth in *Apprendi v. New Jersey*, in which the United States Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). However, because the "same criminal conduct" rule is an exception to the rule that all convictions count separately for purposes of computing the offender score, a finding of same criminal conduct can operate only to *decrease* the offender score and the otherwise applicable sentencing range. RCW 9.94A.525(5)(a), (a)(i); *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 274, 111 P.3d 249 (2005). Therefore, there is no *Apprendi* violation where the trial court addresses the same

---

[7] The court in *Koss* also cited to CrR 6.15(f)(1). 158 Wn. App. at 18. CrR 6.15(f)(1) provides that the trial court must notify the parties only when the jury asks a question about "the instructions or evidence." Here, the jury's inquiry involved neither, and therefore CrR 6.15(f)(1) does not apply. It may be a better practice for the trial court to notify the parties of *any* contact with the jury, even regarding "ministerial" matters. But as discussed above, there is no constitutional right to such notice and CrR 6.15(f)(1) does not require it.

criminal conduct rule because that finding can only serve to decrease the defendant's possible sentence. *See Apprendi*, 530 U.S. at 490; *Markel*, 154 Wn.2d at 274.

We hold that the issue of same criminal conduct is properly decided by the sentencing court. Accordingly, the trial court here did not err in refusing to submit the issue to a jury.

We consider McCarthy's remaining arguments in the unpublished portion of this opinion. We affirm his convictions and sentence.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

In the unpublished portion of this opinion, we address and reject McCarthy's remaining arguments. We hold that that (1) the trial court correctly disqualified the Kitsap County Prosecutor's Office and reset the trial date, and McCarthy failed to preserve his challenge to resetting the trial date; (2) evidence of McCarthy's prior bad acts toward his girl friend, TLC,[8] was admissible to explain her delayed reporting of the charged crimes; (3) the trial court properly excluded evidence of TLC's misconduct because it was irrelevant and cumulative, and admission was not supported by res gestae; (4) the trial court did not abuse its discretion in excluding McCarthy's proposed domestic violence expert because his testimony would not have helped the jury to understand the evidence; (5) TLC's prior consistent statements were admissible under ER 801(d)(1)(ii) because McCarthy implied that TLC had fabricated her story; (6) TLC's vague comment about excluded evidence did not require a mistrial; (7) because he did not object below, we do not consider McCarthy's claims that providing the jury with a tape measure and masking tape resulted in jury misconduct and violated his right to have a verdict based on the evidence;

---

[8] We refer to the victim by her initials to protect her privacy.

and (8) the trial court acted within its discretion when it found that the two assault convictions were not the same criminal conduct.

## ADDITIONAL FACTS

*Charged Crimes*

McCarthy and TLC began a romantic relationship in June 2008, and in August 2008 TLC moved into McCarthy's house. At the time, McCarthy was a senior sergeant for the Port Orchard Police Department. He previously had worked as a Kitsap County deputy sheriff for several years. The relationship was tumultuous. For instance, in November 2008, McCarthy threatened TLC with a propane torch and set fire to her belongings during an argument.

Shortly after 4:00 a.m. on May 2, 2010, McCarthy made a 911 call reporting that his girl friend had fallen from a second story window. When the paramedics arrived, they found TLC lying on the deck directly below a window with a curtain rod lying on top of her. When the paramedics initially asked TLC what had happened, she told them that she had been hanging curtains and fell from the window. When asked a second time, she said she was fearful of police and refused to say what had happened. McCarthy told the paramedics that TLC fell while hanging curtains.

Because McCarthy had sounded hostile when he called 911, Kitsap County sheriff's deputies accompanied the paramedics to the scene. When the deputies asked McCarthy what had happened, he told them that he heard TLC yelling while he was in the shower and, when he went to investigate, he found her lying on the ground below the window. He said that TLC had fallen while hanging curtains. When the deputies asked TLC what had happened, she did not respond.

13

TLC suffered serious injuries. She fractured her right ankle and shoulder and suffered a brain injury. She underwent multiple surgeries and spent five weeks in the hospital.

On August 31, 2010, TLC reported to a detective at the Kitsap County Sheriff's Office that McCarthy had pushed her out the window on May 2. The record does not disclose exactly what TLC told the police at that time. However, she testified at trial that she had been packing her belongings in preparation to move out of McCarthy's house later that day when she felt a gun to the back of her head and heard McCarthy say that he was going to kill her. TLC ran toward the window in an attempt to escape, but McCarthy grabbed her and slammed her against the wall. As she tried to remove the gun from his hand, the two fell to the ground. When they returned to their feet, McCarthy again held the gun to TLC's head. TLC then kicked McCarthy and ran to the window and stood on the ledge – intending to lower herself to the ground below. While TLC was standing on the windowsill McCarthy shoved her in the back, knocking her out of the window.

The State charged McCarthy with second degree assault, RCW 9A.36.021(1)(c), presumably for holding a gun to TLC's head, and first degree assault, RCW 9A.36.011(1)(a) and (c), presumably for pushing her out the window.

*Trial Continuance*

Trial was set for August 23, 2011. On August 12, the State moved to withdraw from the case because of a perceived conflict of interest that precluded the entire Kitsap County Prosecutor's Office from trying the case. Interviews with law enforcement officers suggested to the State that Kitsap County prosecuting attorneys could be required to testify at trial. The trial court disqualified the entire Kitsap County Prosecutor's Office. The Washington State Office of the Attorney General agreed to prosecute the case.

14

As a result of the disqualification, the trial court reset the time for trial deadline under CrR 3.3 to October 11. The State moved for a continuance to October 18, one week past the CrR 3.3 trial deadline. Although the State could have been ready for trial by October 11, TLC was unavailable that week. The trial court granted the continuance.

*Pre-Trial Evidentiary Rulings*

Before trial, the State moved to allow evidence of McCarthy's prior bad acts relating to TLC to prove that she was in reasonable fear of imminent danger for the second degree assault charge and to explain that TLC did not immediately report the assaults because she feared retaliation from McCarthy. The trial court granted the motion with regard to certain specific acts, concluding that the following evidence was admissible to show TLC's reasonable fear of McCarthy and to explain her delay in reporting the incident: (1) McCarthy had struck TLC, physically restrained her with handcuffs, and locked her in a closet; (2) on November 2-3, 2008, McCarthy assaulted TLC, burned her property, and threatened her with a lit propane torch; (3) McCarthy had contacted TLC on numerous occasions in November and December of 2008, in violation of a no-contact order; (4) McCarthy purposefully had hurt TLC's dog while visiting TLC in the hospital in May-June 2010; (5) McCarthy had delayed in obtaining medicine for TLC's dog; and (6) McCarthy routinely had threatened to call police and have TLC arrested during the course of their relationship.

The State also moved to exclude evidence that TLC previously had assaulted McCarthy and also had assaulted a third party. The trial court granted the motion and excluded the evidence, although several incidents of TLC's violence towards McCarthy were admitted at trial without objection.

15

Finally, the State moved to exclude McCarthy's proposed domestic violence expert, a psychologist who McCarthy indicated would testify that TLC's and McCarthy's relationship was dysfunctional and marked by domestic violence. The trial court granted the motion because the jury did not need an expert to assist it in understanding that the couple had a tumultuous relationship and because the necessary foundation for the expert's testimony included TLC's prior bad acts, which would have been unduly prejudicial.

*Trial Testimony*

At trial, the State asked TLC whether McCarthy knew in May 2010 that she had been preparing to move out of his home. TLC responded, "He knew I was moving, like he did a million times before, but he would always find ways, like I said, either making me sick, [or] other things that I'm not allowed to talk about." Report of Proceedings (RP) at 248. McCarthy objected and asked the trial court to strike the statement. The trial court agreed, stating, "It's stricken." RP at 248. McCarthy nevertheless moved for a mistrial, arguing that TLC's statement that there were other " 'things' " she could not talk about violated the trial court's ruling limiting the introduction of McCarthy's prior bad acts to specific events. RP at 258. McCarthy also argued that the error could not be cured by a limiting instruction because the statement was not specific enough to be rebuttable. The trial court denied the motion.

Three State witnesses testified about what TLC had told them had occurred on May 2. All of these statements occurred before TLC reported the assaults to the sheriff's office. McCarthy made hearsay objections, but the trial court ruled that the statements were prior consistent statements and therefore not hearsay. Seven other witnesses offered similar testimony, but McCarthy did not object.

16

*Conviction and Sentencing*

The jury convicted McCarthy on both assault charges. At sentencing, the trial court concluded that the first and second degree assault convictions were not the same criminal conduct because McCarthy had time to pause and reflect upon his actions between committing the assaults.

## ANALYSIS

### A.    TIME FOR TRIAL

McCarthy argues that the trial court improperly extended his trial date beyond that authorized by CrR 3.3, and therefore we should reverse his conviction.[9] He argues that (1) the trial court erroneously concluded that there was a conflict of interest with the Kitsap County Prosecutor's Office, and (2) even if there was a conflict of interest, the time for trial violation resulted from government mismanagement. Therefore, McCarthy argues, there was no justification for extension of the CrR 3.3 trial deadline. Because McCarthy failed to preserve these claims, we decline to review them.

A defendant in custody pending trial must be brought to trial no later than 60 days after the commencement date, which initially is the arraignment date. CrR 3.3(b)(1), (c)(1); *State v. Williams*, 104 Wn. App. 516, 521, 17 P.3d 648 (2001). However, the commencement date "shall" be reset upon disqualification of counsel, and under such circumstances the date of disqualification is the new commencement date. CrR 3.3(c)(2)(vii). The State's failure to bring a defendant to trial within the time provided by CrR 3.3 results in dismissal with prejudice. CrR 3.3(h).

---

[9] Although McCarthy mentions his "right to a speedy trial," he bases his analysis only on CrR 3.3. Br. of Appellant at 31 (boldface and capitalization omitted). Therefore, we analyze this argument under the time for trial rules.

However, CrR 3.3 contains specific requirements for time to trial objections.

> A party who objects to the [trial start] date set upon the ground that it is not within the time limits prescribed by this rule must, within 10 days after the notice is mailed or otherwise given, move that the court set a trial within those time limits. Such motion shall be promptly noted for hearing by the moving party in accordance with local procedures. A party who fails, for any reason, to make such a motion shall lose the right to object that a trial commenced on such a date is not within the time limits prescribed by this rule.

CrR 3.3(d)(3).

The trial court originally set McCarthy's trial date for August 23, 2011, with a time for trial deadline of September 22. On August 12, the trial court granted the State's motion to disqualify the entire Kitsap County Prosecutor's Office from the case because of an alleged conflict of interest. Consistent with CrR 3.3(c)(2)(vii), the trial court reset the commencement date for the time for trial calculation to August 12, which reset the time for trial deadline to October 11. The court then set the trial date for October 18, after the State mad an immediate motion to continue the trial past the new deadline.

McCarthy did not object to the trial court's decision to reset the trial date. CrR 3.3 violations are not constitutionally based and cannot be raised for the first time on appeal. RAP 2.5(a)(3); State v. Smith, 104 Wn. 2d 497, 508, 707 P.2d 1306 (1985). McCarthy's failure to object forecloses his ability to challenge the time for trial date under CrR 3.3(d)(3).[10]

B.     McCarthy's Prior Misconduct

McCarthy argues that the trial court erred when it granted the State's motion to admit under ER 404(b) particular instances of his prior assaults and other misconduct toward TLC. He

_____

[10] McCarthy also did not object below to the trial court's disqualification of the entire Kitsap County Prosecutor's Office. As a result, under RAP 2.5(a) he has waived this issue for appeal because he does not claim that any of the exceptions in RAP 2.5(a) apply. And he does not argue that the trial court abused its discretion by granting the State's motion to continue the trial date past the new time for trial deadline to October 18.

further argues that the admission of this evidence without a limiting instruction violated his due process rights because his conviction was based on inadmissible propensity evidence. We disagree.

1. ER 404(b) Analysis

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, this evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). ER 404(b)'s list of other purposes for which evidence of a defendant's prior misconduct may be introduced is not exclusive. *State v. Baker*, 162 Wn. App. 468, 473, 259 P.3d 270, *review denied*, 173 Wn.2d 1004 (2011). We review the trial court's decision to admit evidence under ER 404(b) for abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009).

ER 404(b) must be read in conjunction with ER 403, which requires the trial to court to exercise its discretion in evaluating whether relevant evidence is unfairly prejudicial. *Fisher*, 165 Wn.2d at 745. Before a trial court admits evidence under ER 404(b), it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value of the evidence against its prejudicial effect. *Fisher*, 165 Wn.2d at 745. The trial court must complete this ER 404(b) analysis on the record in order to permit the appellate court to determine whether the trial court's exercise of discretion was based on careful and thoughtful consideration of the issue. *State v. Stein*, 140 Wn. App. 43, 67, 165 P.3d 16 (2007). However, when the record as a whole allows us to decide the admissibility

19

of evidence, a trial court's failure to articulate the ER 404(b) balancing process on the record is not reversible error. *State v. Gogolin*, 45 Wn. App. 640, 645, 727 P.2d 683 (1986).

The trial court ruled that evidence of McCarthy's prior assaults on TLC was relevant for two reasons. First, the evidence showed her reasonable fear that McCarthy would shoot her. The State had the burden of showing that TLC had a reasonable apprehension of bodily injury when McCarthy put a gun to her head and threatened to kill her. The trial court instructed the jury that an "assault" is "an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury." Clerk's Papers (CP) at 83. This statement is consistent with the common law definition. *See State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009) (holding that one type of assault is "putting another in apprehension of harm"). Under ER 404(b), evidence of a defendant's prior violent acts can be admitted to show the victim's " 'reasonable fear of bodily injury' " as part of the State's burden to prove that element of the crime of assault. *State v. Magers*, 164 Wn.2d 174, 183, 189 P.3d 126 (2008). Therefore, we agree with the trial court that evidence of prior assaults was relevant to show TLC's reasonable fear of bodily injury.

Second, the trial court ruled that evidence of prior assaults was relevant to explain TLC's delay in reporting the incident. When the victim's credibility is at issue, evidence of the defendant's prior physical abuse of the victim may be admissible under ER 404(b) to explain the victim's delay in reporting subsequent abuse. *Magers*, 164 Wn.2d at 185-86; *Baker*, 162 Wn. App. at 475.

As Division One of this court noted in *Baker*:

"[V]ictims of domestic violence often attempt to placate their abusers in an effort to avoid repeated violence, and often minimize the degree of violence when discussing it with others. The [victim's] credibility was a central issue at trial. The jury was entitled to evaluate her credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim."

162 Wn. App. at 475 (quoting *State v. Grant*, 83 Wn. App. 98, 107–08, 920 P.2d 609 (1996)).

TLC did not report the May 2 assault until August 31, nearly four months after it occurred. Moreover, on cross-examination, defense counsel questioned TLC about why she did not tell the paramedics that she had been pushed out of a window when they arrived to assist her on May 2, thereby placing her credibility at issue. Therefore, we agree with the trial court that evidence of McCarthy's prior assaults was relevant to explain TLC's delayed reporting. *Baker*, 162 Wn. App. at 475.

The trial court also ruled that evidence that McCarthy had intentionally hurt TLC's dog and had delayed in obtaining medicine for the dog was relevant to explain TLC's delayed reporting of the incident. The evidence showed that TLC had reason to believe that McCarthy might hurt the dog if she disclosed what had really happened. We agree that the evidence is relevant for this purpose.

Finally, the trial court ruled that evidence that McCarthy and his law enforcement associates frequently violated no-contact orders relating to TLC and that McCarthy routinely had threatened to call the police and have TLC arrested was relevant to show that TLC did not trust local police. This distrust was relevant to explain TLC's delay in reporting the incident to the police. We agree that the evidence is relevant for this purpose.

21

2. Probative Value

Because the evidence of McCarthy's prior bad acts was relevant, the key issue here is whether the prejudicial effect of that evidence outweighed its probative value. ER 403 provides that relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice." The trial court ruled that the probative value of the bad acts evidence outweighed the danger of unfair prejudice. We review a trial court's ER 403 balancing under a " 'manifest abuse of discretion' " standard of review. *State v. Vreen*, 143 Wn.2d 923, 932, 26 P.3d 236 (2001) (internal quotation marks omitted) (quoting *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995)).

With regard to proving apprehension of harm, the probative value of this prior assault evidence was relatively slight. The State already had submitted evidence that McCarthy had placed a loaded gun against TLC's head and threatened to kill her. Arguably, this conduct would have created an obvious fear of bodily injury regardless of McCarthy's prior misconduct. Because bad acts evidence is inherently prejudicial, the probative value to show apprehension of harm could be outweighed by the danger of unfair prejudice.

On the other hand, TLC's delayed report of the incident to law enforcement was a crucial issue at trial. McCarthy emphasized that TLC's initial statements to the police were accurate and her subsequent testimony was not, and that she did not report that he had assaulted her because he had not. Evidence of McCarthy's abusive behavior toward TLC, misconduct toward her dog, and misconduct causing TLC to distrust the police was highly probative for explaining her conduct after the incident. We agree with the trial court that the probative value of this evidence outweighed the danger of unfair prejudice.

We hold that the trial court did not abuse its discretion under ER 404(b) in allowing evidence of McCarthy's prior bad acts.

3. Limiting Instruction

McCarthy argues that his convictions were based on inadmissible propensity evidence in violation of his due process rights because the trial court failed to instruct the jury to use the ER 404(b) evidence for the limited purpose of proving an element of the crime and evaluating TLC's credibility. We agree that McCarthy was entitled to a limiting instruction if he wanted one. "If evidence of a defendant's prior crimes, wrongs, or acts is admissible for a proper purpose, the defendant is entitled to a limiting instruction upon request." *State v. Gresham*, 173 Wn.2d 405, 423, 269 P.3d 207 (2012).

Nevertheless, although the trial court invited defense counsel to request a limiting instruction, defense counsel did not. McCarthy does not assign error to his counsel's failure to propose a limiting instruction and we presume that defense counsel's choice not to request one was a tactical decision to avoid drawing further attention to the evidence. *State v. Barragan*, 102 Wn. App. 754, 762, 9 P.3d 942 (2000). And to the extent that McCarthy assigns error to the trial court's failure to provide a limiting instruction sua sponte, his claim fails because the trial court has no such duty. *Gresham*, 173 Wn.2d at 423 n. 2.

C.    EXCLUSION OF TLC'S PRIOR MISCONDUCT

McCarthy argues that the trial court violated his constitutional rights to confront his accuser and to present a defense by excluding evidence of TLC's prior assaults against him and a third party. We disagree.

1.    Right of Confrontation

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the rights to confront and cross-examine adverse witnesses and to present testimony in one's defense. *State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983). The right to confrontation includes the right to elicit facts tending to show a witness's bias, but the scope or extent of cross-examination eliciting a witness's bias is within the discretion of the trial court. *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980). If a trial court erroneously excludes evidence in violation of a defendant's constitutional rights to confrontation or to present a defense, "reversal is required unless no rational jury could have a reasonable doubt that the defendant would have been convicted even if the error had not taken place." *State v. Spencer*, 111 Wn. App. 401, 408, 45 P.3d 209 (2002).

The right to confrontation is not absolute. *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). The trial court's decision to exclude impeachment evidence based on evidentiary rules will not infringe on a defendant's constitutional rights unless excluding the evidence "wholly prevented [the defendant] from cross-examining key witnesses on certain subjects central to [his] defense[ ]." *State v. French*, 157 Wn.2d 593, 604, 141 P.3d 54 (2006). "A trial court may, in its discretion, reject cross-examination where the circumstances only remotely tend to show bias or prejudice of the witness, where the evidence is vague, or where the evidence is merely argumentative and speculative." *Roberts*, 25 Wn. App. at 834. And a criminal defendant has no constitutional right to present irrelevant evidence. *Hudlow*, 99 Wn.2d at 15.

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *Darden*, 145 Wn.2d at 619. Therefore, we will not reverse such a ruling unless the trial court's decision was manifestly unreasonable or based upon untenable grounds or reasons. *Darden*, 145

Wn.2d at 619. We may review de novo an alleged denial of the Sixth Amendment right to present a defense and confront witnesses, but only if the evidence is material and the defendant's need to present the evidence outweighs the State's interest in precluding the evidence. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

2. TLC's Assaults on McCarthy

McCarthy argues that testimony regarding TLC's acts of violence against him was admissible to show TLC's bias against him. However, the trial court properly excluded this evidence because it was cumulative, and the State did not open the door to its admission.

First, the evidence of TLC's assaults on McCarthy would have duplicated similar evidence. The trial court's exclusion of specific incidents of prior violence did not prevent McCarthy from testifying about TLC's behavior towards him or the nature of their relationship. He testified that (1) TLC went "berserk" when she was angry, stating that she was "[j]ust absolutely wild, angry, screaming and yelling," RP at 1030; (2) "when she gets enraged, there's just no reasoning with her" and she "wins her arguments by just keep on going [sic] at it . . . until she gets angry and then starts breaking things," RP at 1033, 1078; (3) she "terrorized" and blackmailed him by threatening to disclose to the police that he had violated his no-contact order on numerous occasions, RP at 1071, 1073; and (4) she was "controlling" and constantly monitored his computer and cellular telephone and secretly audio-taped him on multiple occasions. RP at 1068.

Moreover, at trial McCarthy was permitted to testify without objection regarding specific incidents of TLC's violence against him. He testified that (1) she "came over and hauled off and cracked me right across the face," RP at 1032; (2) she "smacked" him, RP at 1039; (3) after an argument she took his computer and "smashed it to bits all over the floor," RP at 1035; (4) she

25

smashed his cellular telephone during an argument; and (5) he had to call the police because she refused to allow him to leave his bedroom. And TLC admitted that her counselor advised her to read about anger management.

Given this evidence, additional evidence of TLC's assaults against McCarthy would have been cumulative and would not have been significant. As a result, McCarthy has failed to show that his inability to present this evidence wholly prevented him from cross-examining a key witness central to his defense and that the trial court's exclusion of the testimony violated his constitutional right to present a defense. *French*, 157 Wn.2d at 604-05. And because the evidence was cumulative, under ER 403 the trial court did not abuse its discretion in excluding it.

Second, we reject McCarthy's argument that the State opened the door to evidence of TLC's abusive behavior toward McCarthy by eliciting testimony regarding McCarthy's abuse of TLC. In support of this argument, he relies on *State v. Gefeller*, in which our Supreme Court held that where the defendant elicited testimony from a witness that lie detector test results were "inconclusive," he opened the door for the State to ask the witness to explain what he meant by inconclusive results. 76 Wn.2d 449, 454-55, 458 P.2d 17 (1969), *overruled on other grounds by State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994). The court held that "when a party opens up a subject of inquiry on direct or cross-examination, he contemplates that the rules will permit cross-examination or redirect examination, as the case may be, within the scope of the examination in which the subject matter was first introduced." *Gefeller*, 76 Wn.2d at 455.

However, McCarthy does not explain how evidence of his assaults against TLC somehow opened the door for evidence of her assaults against him. The general desire to "complete the picture" of the couple's relationship is not a sufficient basis to indiscriminately open the door to all of TLC's prior misconduct.

26

### 3. TLC's Assault on Third Person

McCarthy argues that TLC's assault on a third party should have been admitted. He claims that TLC assaulted a pregnant stranger by ripping a necklace from the stranger's neck, and that he had talked officers out of making a custodial arrest. He argues that this evidence was admissible under ER 106 (the rule of completeness) or the res gestae exception to ER 404(b). We disagree.

First, McCarthy argues that the police report from TLC's assault on a third party should have been admissible under ER 106. ER 106 provides, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it." But McCarthy does not point to a writing or a recorded statement that the State introduced into evidence that was part of or related to the police report. Moreover, he fails to show how evidence of TLC's assault of a third party should "in fairness" be considered with TLC's testimony that McCarthy threatened to have her arrested for no reason.

Second, McCarthy's "res gestae" argument similarly fails. Under the theory of res gestae, evidence of prior bad acts is admissible if it " 'complete[s] the story of the crime on trial by providing its immediate context of happenings near in time and place' " because such evidence is relevant under ER 401. *State v. Grier*, 168 Wn. App. 635, 646, 278 P.3d 225 (2012) (alteration in original) (internal quotation marks omitted) (quoting *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995)). Accordingly, "[w]here another offense constitutes a 'link in the chain' of an unbroken sequence of events surrounding the charged offense," evidence of that offense is admissible in order to complete the picture for the jury. *State v. Brown*, 132 Wn.2d

529, 571, 940 P.2d 546 (1997) (quoting *State v. Tharp*, 96 Wn.2d 591, 594, 637 P.2d 961 (1981)).

Here, McCarthy argues that TLC's assault on a third party should have been admitted to "complete the story of each prior alleged incident [in which McCarthy allegedly harmed her], so that the jury received a complete picture." Br. of Appellant at 28 n.13. He appears to ask us to apply the res gestae theory to admit prior bad acts of someone other than the defendant to complete the picture of an event other than the one for which the defendant was charged. This argument extends the so-called "res gestae rule" too far.[11]

We hold that the trial court did not violate McCarthy's right to confront witnesses against him or to present a defense and did not abuse its discretion when it excluded evidence of TLC's prior misconduct.

D.    DOMESTIC VIOLENCE EXPERT

McCarthy argues that the trial court abused its discretion when it excluded his proposed domestic violence expert. The State responds that the trial court properly excluded the testimony because it would not have been helpful to the jury, and therefore was inadmissible under ER 702. We agree with the State.

We review a trial court's decision to exclude expert testimony for abuse of discretion. *State v. Willis*, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004). ER 702 provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Under ER 702, an expert's opinion is admissible if the witness is properly qualified, relies on generally

---

[11] See our discussion of the so-called res gestae rule in *Grier*, 168 Wn. App. at 645-47.

accepted theories, and the expert's testimony is helpful to the trier of fact. *State v. Black*, 109 Wn.2d 336, 341, 745 P.2d 12 (1987). The trial court excluded testimony from McCarthy's proposed domestic violence expert because the proffered testimony was within the general knowledge of jurors and would not assist them to understand the evidence as required by ER 702. McCarthy argued below that the expert's testimony would help the jury understand why TLC would delay in reporting the incident, remain in contact with McCarthy after the assault occurred, and "stay in a relationship fraught with such ongoing emotional and physical abuse." CP at 56. But McCarthy has failed to show how the expert's testimony was relevant to any aspect of his defense. Why TLC stayed in the relationship sheds no light on whether the charged assaults occurred. As a result, he has failed to show that the testimony would have been helpful to the jury under ER 702.

Even if the expert's testimony would have been helpful to the jury, the trial court concluded that it was inadmissible under ER 403 because it would have confused the jury and was unduly prejudicial. The trial court reasoned:

> Dr. Rybicki's proffered testimony would delve into past behaviors of [TLC] and the defendant that are far afield from the primary issue of whether assaults occurred on May 2, 2010. The court is extremely concerned that Dr. Rybicki's testimony would carry the case outside the scope of the relevant facts and the court would lose control over restricting the case to relevant evidence.

CP at 245.

Further, the trial court concluded that in order for the expert to form his opinion, he was required to rely on inadmissible evidence of TLC's prior bad acts towards McCarthy. We agree that the proposed expert testimony regarding the nature of the parties' relationship would have confused the jury and was unduly prejudicial. The trial court did not abuse its discretion when it excluded Dr. Rybicki's testimony.

29

McCarthy argues that the expert testimony was admissible because "[w]here the prosecution introduces testimony about prior abuse between the defendant and another person, expert testimony is admissible to help the jury evaluate credibility." Br. of Appellant at 30. In support of his argument, McCarthy relies on *Grant*, in which Division One of this court held that evidence of the defendant's earlier assaults on the victim was admissible under ER 404(b) because it helped to establish the victim's credibility and to explain why the victim minimized the extent of the abuse and why she delayed in reporting it. 83 Wn. App. at 107-09. But contrary to McCarthy's assertion, *Grant* does not stand for the proposition that a defendant may introduce prior bad acts of the *victim* by means of expert testimony to either discredit the victim's testimony or support his own credibility.[12]

Given the expert's minimal helpfulness to the jury and the potentially prejudicial and misleading content of his testimony, we hold that the trial court did not abuse its discretion when it excluded the testimony.

E.      TLC's Prior Consistent Statements

McCarthy argues that the trial court abused its discretion when it allowed witnesses to testify over his hearsay objection about TLC's prior statements about the incident. He also argues that his counsel was ineffective for failing to object to other similar statements and for failing to request a limiting instruction. We disagree.

---

[12] McCarthy also argues that that the State "opened the door" to the expert testimony by introducing evidence of "prior incidents that allegedly resulted in [TLC]'s delayed reporting, inconsistent statements, and contradictory behavior." Br. of Appellant at 30. However, although he cites three cases generally discussing the "opening the door" doctrine, he fails to further support his argument with citations to the record or authority. Accordingly, we decline to address his argument further. RAP 10.3(a)(6); *State v. Olson*, 126 Wn.2d 315, 321, 893 P.2d 629 (1995).

1.  ER 801(d)(1)(ii) Analysis

We review evidentiary rulings for abuse of discretion. *Darden*, 145 Wn.2d at 619.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or

hearing, offered in evidence to prove the truth of the matter asserted. ER 801(c). Hearsay is

generally inadmissible. ER 802. However, a statement is not hearsay if

> [t]he declarant testifies at the trial or hearing and is subject to cross examination
> concerning the statement, and the statement is . . . consistent with the declarant's
> testimony and is offered to rebut an express or implied charge against the
> declarant of recent fabrication or improper influence or motive.

ER 801(d)(1)(ii). Accordingly, although a witness's prior consistent statements are not

admissible to prove that in-court testimony is true, the statements are admissible to rebut an

alleged fabrication. *State v. Perez*, 137 Wn. App 97, 107, 151 P.3d 249 (2007).

Our Supreme Court has adopted an additional requirement for application of ER

801(d)(1)(ii): "[T]he proponent of the testimony must show that the witness's prior consistent

statement was made *before* the witness's motive to fabricate arose in order to show the

testimony's veracity and for ER 801(d)(1)(ii) to apply." *State v. Thomas*, 150 Wn.2d 821, 865,

83 P.3d 970 (2004). This is because "[m]ere repetition of a statement made when the motive to

fabricate was the same does nothing to establish veracity." *State v. Brown*, 127 Wn.2d 749, 758

n.2, 903 P.2d 459 (1995). In addition, "a charge of recent fabrication can be rebutted by the use

of prior consistent statements only if those statements were made under circumstances indicating

that the witness was unlikely to have foreseen the legal consequences of his or her statements."

*State v. Makela*, 66 Wn. App. 164, 168-69, 831 P.2d 1109 (1992).

In this case, defense counsel raised an inference that TLC had fabricated her story by

confronting her with statements she allegedly made to paramedics that she fell from the window

31

instead of being pushed and statements she made at the hospital about having jumped out the window. Defense counsel also questioned whether TLC's trial testimony that she flew out the window was fabricated, asserting that she had not given that description before trial. Even if there is no express claim of fabrication, an inference that a witness has fabricated testimony is sufficient to trigger application of ER 801(d)(1)(ii). *Thomas*, 150 Wn.2d at 865.

Further, most of the prior consistent statements admitted into evidence were made while TLC was in the hospital immediately after the incident or within several weeks thereafter. All the statements were made long before TLC reported the incident to the sheriff's office. The timing of the statements supports a finding that they were made before TLC had a motive to fabricate and before TLC could foresee the legal consequences of her statements.

We hold that the trial court did not abuse its discretion when it admitted TLC's prior consistent statements under ER 801(d)(1)(ii).

2.    Ineffective Assistance of Counsel

McCarthy also argues that his trial counsel was ineffective for failing to object to other alleged hearsay testimony regarding TLC's prior statements about what occurred on May 2, 2010, and for failing to request a limiting instruction. We disagree.

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was "deficient," and (2) the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). The failure to show either element ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), *overruled on other grounds by Carey v. Musladin*, 549 U.S.

70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34.

We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. A claim that trial counsel was ineffective does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactics. *Grier*, 171 Wn.2d at 33. To rebut the strong presumption that counsel's performance was effective, "the defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 42 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

"The decision of when or whether to object is a classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Therefore, we presume that "the failure to object was the product of legitimate trial strategy or tactics, and the onus is on the defendant to rebut this presumption." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *Madison*, 53 Wn. App. at 763. To prove that failure to object rendered counsel ineffective, the defendant "must show that not objecting fell below prevailing professional norms, that the proposed objection would likely have been sustained, and that the result of the trial would have been different if the evidence had not been admitted." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004) (footnotes omitted).

In this case, the trial court properly admitted TLC's prior consistent statements under ER 801(d)(1)(ii), and therefore counsel's objections would not been successful. Further, because the trial court allowed evidence of other prior statements over counsel's objections, McCarthy cannot show that an objection to the testimony would have been sustained. *Davis*, 152 Wn.2d at 714. Similarly, whether or not to request a limiting instruction is a matter of trial tactics. *State v. Yarbrough*, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009). McCarthy also has failed to show that the trial court would have granted a request for a limiting instruction. As a result, his ineffective assistance of counsel claims fail.

## F.    MOTION FOR MISTRIAL

McCarthy argues that the trial court abused its discretion by denying his motion for a mistrial based on TLC's inappropriate comment about the exclusion of evidence.[13] TLC stated that McCarthy "would always find ways, like I said, either making me sick, [or] other things that I'm not allowed to talk about." RP at 248. We disagree.

We review a trial court's denial of a mistrial for abuse of discretion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). Our Supreme Court has stated that abuse of discretion will be found for denial of a mistrial only when " 'no reasonable judge would have reached the same conclusion.' " *Emery*, 174 Wn.2d at 765 (internal quotation marks omitted) (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1041 (1989)). We will overturn a trial court's denial of a mistrial motion only when there is a " 'substantial likelihood' " that the error affected the jury's verdict. *State v. Rodriguez*, 146 Wn.2d 260, 269-70, 45 P.3d 541 (2002) (internal

---

[13] McCarthy also argues that the trial court violated his due process rights by denying his motion for a mistrial, but fails to support his constitutional claim with argument or citation to authority. Therefore, we do not address it. RAP 10.3(a)(6); *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).

quotation marks omitted) (quoting *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)). A mistrial should be ordered " 'only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly.' " *Rodriguez*, 146 Wn.2d at 270 (quoting *State v. Kwan Fai Mak*, 105 Wn.2d 692, 701, 718 P.2d 407 (1986)).

We examine three factors – the *Hopson* factors – when determining whether an irregularity warrants a mistrial: " '(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it.' " *Emery*, 174 Wn.2d at 765 (quoting *Hopson*, 113 Wn.2d at 284). These factors are considered with "deference to the trial court," *State v. Perez-Valdez*, 172 Wn.2d 808, 818, 265 P.3d 853 (2011); because the trial court is in the best position to discern prejudice. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).

Regarding the first factor, McCarthy argues that TLC's comment was a serious irregularity because the trial court had specifically ruled that only certain instances of McCarthy's prior misconduct were admissible under ER 404(b), and the comment suggested that McCarthy had committed additional prior bad acts outside the scope of that ruling. The improper admission of a defendant's prior misconduct can be a serious irregularity. *State v. Babcock*, 145 Wn. App. 157, 163-64, 185 P.3d 1213 (2008). And under some circumstances, the admission of a defendant's prior bad acts in violation of a motion in limine can be grounds for a mistrial. *See State v. Escalona*, 49 Wn. App. 251, 252, 255-56, 742 P.2d 190 (1987). But here, where TLC's comment did not refer to specific bad acts, but instead was vague and did not refer to any actual evidence that had been excluded, the irregularity was not particularly serious. The mere reference to "other things" did not tell the jury anything.

With regard to the second factor, even if TLC's comment could be interpreted as referring to prior bad acts, it was cumulative. The jury had already heard extensive testimony of McCarthy's prior bad acts.

Finally, the trial court informed the jury that the comment was stricken. Although the trial court did not give a formal instruction directing the jury to disregard the comment, McCarthy did not request one. Instead, McCarthy objected and asked the trial court to strike the comment. The trial court sustained the objection and informed the jury that the comment was stricken. The irregularity was not so serious that it could not be cured by this prompt response. And we presume that the jury followed the trial court's striking of the comment. *Babcock*, 145 Wn. App. at 164.

Analysis of the *Hopson* factors indicates that TLC's comment did not warrant a mistrial. We hold that the trial court did not abuse its discretion when it denied McCarthy's mistrial motion.

## G.    JURY MISCONDUCT/VERDICT BASED ON EVIDENCE

McCarthy argues, for the first time on appeal, that the trial court's provision of a tape measure and masking tape to the jury violated his right to a verdict free from jury misconduct and based solely on the evidence. He claims that the materials allowed the jury to perform experiments relating to the dimensions of the window and the distance TLC fell. However, McCarthy has failed to preserve this argument for appeal.

RAP 2.5(a) states that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." The purpose behind this rule is to encourage the efficient use of judicial resources by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals. *State v. Robinson*, 171 Wn.2d 292, 304-05,

253 P.3d 84 (2011). RAP 2.5(a) further states that a party may raise particular types of errors for the first time on appeal, including "manifest error affecting a constitutional right." RAP 2.5(a)(3). But McCarthy fails to argue that any of the exceptions listed in RAP 2.5(a) apply. Therefore, we do not address his claims that the trial court's provision of materials to the jury violated his right to a verdict free from juror misconduct and based solely on the evidence.

H.    SAME CRIMINAL CONDUCT

McCarthy argues that his two assault convictions should have been characterized as the same criminal conduct for offender score and sentencing purposes. We disagree.

When sentencing a person for multiple current offenses, the sentencing court calculates the offender score by considering all other current and prior convictions as if they were prior convictions. RCW 9.94A.589(1)(a). However, if the sentencing court finds that some or all of the current offenses are the same criminal conduct, those offenses are counted as a single crime. RCW 9.94A.589(1)(a). Crimes constitute the "same criminal conduct" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Unless all three of these elements are present, the offenses are not the same criminal conduct and must be counted separately in calculating the offender score. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). Courts narrowly construe RCW 9.94A.589(1)(a) to deny most same criminal conduct claims. *State v. Wilson*, 136 Wn. App. 596, 613, 150 P.3d 144 (2007). The defendant bears the burden of proving that his convictions were the same criminal conduct. *State v. Aldana Graciano*, 176 Wn.2d 531, 539–40, 295 P.3d 219 (2013).

We review the trial court's determination of what constitutes the same criminal conduct for an abuse of discretion or misapplication of the law. *Graciano*, 176 Wn.2d at 537. "Under

this standard, when the record supports only one conclusion on whether crimes constitute the 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result." *Graciano*, 176 Wn.2d at 537–38. "But where the record adequately supports either conclusion, the matter lies in the court's discretion." *Graciano*, 176 Wn.2d at 538.

In this case, although McCarthy committed the two assaults against the same victim, at the same place and relatively close in time, the trial court ruled that they were not the same criminal conduct because McCarthy's intent was not the same for both crimes. To determine if two crimes share a criminal intent, we focus on whether the defendant's intent, viewed objectively, changed from one crime to the next. *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1988). We also consider whether one crime furthered the other. *State v. Lessley*, 118 Wn.2d 773, 778, 827 P.2d 996 (1992). In addition, when the defendant has time to "pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act[, he] form[s] a new intent to commit the second act." *State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997).

Even where two assaults were committed against the same victim, in the same place and close in time, courts have held that where one of the assaults involved a deadly weapon and one involved the infliction of bodily harm, the crimes do not share the same criminal intent. *State v. Lopez*, 142 Wn. App. 341, 352-53, 174 P.3d 1216 (2007); *see also Grantham*, 84 Wn. App. at 859. Here, McCarthy held a gun to TLC's head and told her that he was going to kill her. Then, after TLC kicked him and tried to escape, he pushed her from a second story window. As in *Lopez*, it was within the trial court's discretion to find that during the first assault McCarthy intended to cause TLC to fear for her life by putting the gun to her head, while during the second assault he intended to cause great bodily harm. 142 Wn. App. at 352-53. Accordingly, we hold

that the trial court did not abuse its discretion when it concluded that the two assault convictions were not the same criminal conduct.

We affirm.

_____
MAXA, J.

We concur:

_____
HUNT, J.

_____
WORSWICK, C.J.